JAMES C. ROGERS, Assignee,

*vs.*

PORTLAND AND BRUNSWICK STREET RAILWAY.

Cumberland.    Opinion March 14, 1905.

*Equitable Estoppel.    Assignment of Claim.    Trover.*

The doctrine of equitable estoppel is founded upon the principles of equity and justice, and is applied so as to conclude a party, who by his acts and admissions intended to influence the conduct of another, when, in good conscience and honest dealings, he ought not to be permitted to gainsay them.

This doctrine of equitable estoppel should be applied with great care in each case, so that a person may not be debarred from the maintenance of a suit based upon his legal rights, unless the conduct relied upon as creating an estoppel has been of such a character, and has resulted in such injury to the person relying upon such conduct, that, in equity and good conscience, he should be thereby prohibited from enforcing the legal rights which he otherwise would have, nor unless in any given case all the elements exist

which have been universally held to be essential for the purpose of creating an estoppel.

The conduct, declarations or silence relied upon to create an estoppel, must be made to or in the presence of a person known to have an interest in the subject matter, and must be of such a character as would naturally have the effect of influencing the conduct of the person to whom it is addressed.

It is not necessary, in accordance with the prevailing rule, that the conduct creating an estoppel should be characterized by an actual intention to mislead and deceive. Neither would ignorance upon the part of the plaintiff of his legal rights, provided he had a full knowledge of the facts, be an answer to the estoppel relied upon.

In order to create an estoppel, the conduct, misrepresentations or silence of the person claimed to be estopped must be made to or in the presence of a person who had no knowledge of the true state of facts, and who did not have the same means of ascertaining the truth as did the other party.

A person will not be estopped merely by his silence and failure to disclose facts that may be ascertained by an examination of public records, when the situation is not such as to place upon him the duty of making known the truth. In such a case he may rely upon the notice given to all by the public records. But where the situation is such that it is his duty to speak, as where inquiries are made of him, or where, instead of merely remaining silent, he does some positive affirmative act, which would naturally have the effect of misleading and deceiving one, then the mere fact that the truth can be ascertained by an examination of the records, does not prevent the operation of the estoppel against him.

The law distinguishes between silence and encouragement. While silence may be innocent and lawful, to encourage and mislead another into expenditures on a bad and doubtful title would be a positive fraud that should bar and estop the party.

On motion and exceptions by defendant. Motion sustained. Exceptions not considered.

Trover for the alleged conversion of 1800 loads or cubic yards of earth and gravel of the alleged value of $180. The action was brought and tried in the Superior Court for Cumberland County. Verdict for plaintiff for $127.16. Defendant took exceptions to the refusal of the presiding Justice to give certain requested instructions, and also filed a general motion for a new trial. The motion alone was considered.

The case is fully stated in the opinion.

*Robert Treat Whitehouse,* for plaintiff.

*Thompson & Wheeler,* for defendant.

SITTING: WISWELL, C. J., STROUT, POWERS, PEABODY, SPEAR, JJ.

WISWELL, C. J.   At the time of the transactions later referred to, the plaintiff was in the possession of a farm in the town of Free-port, situated between Freeport Village and the town of Brunswick, the title to which came to him by devise from his father, subject to a mortgage given by the latter to the Topsham and Brunswick Twenty-five Cent. Savings Bank.   On June 4, 1898, after the death of the plaintiff's father, the bank commenced foreclosure of this mortgage by publication, the first publication being on that day, and on June 4, 1899, the mortgage containing a one year foreclosure clause, it became fully foreclosed, and the right of redemption became barred. Subsequently, on March 29, 1900, the Savings Bank gave a lease of the premises to the plaintiff for a monthly rental.   The lease contained a provision to the effect that after taxes, insurance, expenses and interest had been deducted from the rent paid, "the balance shall be used towards payment for said premises by said lessee, if he shall desire to purchase the premises from the lessor."   Thereafter, the plaintiff continued in possession of the premises as tenant of the Savings Bank until the time hereafter referred to, and subsequently.

In the early summer of the year 1902, the defendant was building its railroad between Freeport and Brunswick; in May of that year a person connected with the construction of the road saw the plaintiff for the purpose of obtaining permission from him to take material from this farm for use in filling or in ballasting the road; this per-mission was finally given, but for a limited period of time only, and the plaintiff then objected to the taking of any more of this material from the premises; but on July 4, 1902, Mr. Amos F. Gerald, the general manager of the defendant, saw the plaintiff and sought to obtain from him further permission to take this material from the farm, and agreed to be responsible, either in his own behalf or on that of defendant, for all the earth and gravel that had been taken or that should be taken under the new permission desired; thereupon, in consideration of this promise on the part of Gerald, the plaintiff consented that the railroad company might take such earth and gravel

as was needed for their purposes, the price to be paid not being agreed upon; during the time that this material was being taken from the farm and hauled to the defendant's railroad, the plaintiff assisted, for a while, at least, in the employment of the railroad company.

At this time the plaintiff did not disclose to Gerald the fact that he was not the owner of the farm which he was occupying, or that it was owned by the Savings Bank, or that anybody else had any claim on or interest in it, and Gerald had no knowledge of the ownership of the farm, other than appeared from the plaintiff's possession and his conduct in assuming to contract in relation to taking and carrying away such material, upon Gerald's promise to be responsible for what the material was reasonably worth. On December 4, 1902, Gerald paid to the plaintiff the sum of $25., either in full payment for this gravel, as claimed by him, or in partial payment therefor, as claimed by the plaintiff, and as found by the jury. Later, the plaintiff brought in his own name an action of assumpsit upon an account annexed to the writ to recover the balance claimed to be due him for this same quantity of gravel and earth, but when the former case came on for trial, on November 6, 1903, these facts in regard to the title became known for the first time to the plaintiff's counsel, and the action was entered. neither party.

Still later, on November 13th, 1903, the Savings Bank, the owner of the premises made an assignment to the plaintiff of "any and all rights, claims and demands it now has or may have against the Portland & Brunswick Street Railway, . . . . for the severance from the freehold and conversion by said Portland & Brunswick Street Railway, its agents or employees, . . . . of any earth or gravel, stone or stone wall from the premises of the farm situated in said Freeport, now occupied by the said Jas. C. Rogers, and owned by the said Topsham & Brunswick Twenty-five Cent Savings Bank; and also all the right, title and interest of said Bank in and to the earth, gravel, stone and stone wall so severed and converted as aforesaid." On the same day the plaintiff entered into an agreement with the Savings Bank, in which he agreed, in consideration of this assignment, that all sums which might be recovered by him in any suit

agaiust the railroad company, should be paid over to the Savings Bank, less the expense of prosecuting such suit, and that the same should be applied to the reduction of the plaintiff's indebtedness to the bank.

Thereupon, on December 2, 1903, the plaintiff commenced in his own name, as assignee of the Savings Bank, this action of trover to recover for the conversion of the quantity of earth and gravel taken by the railroad company. The case was tried before a jury and resulted in a verdict for the plaintiff for $127.16, the defendant brings the case here both upon exceptions and a motion for a new trial. The defendant in its plea set up and relied upon an equitable estoppel based upon the facts already referred to, and presented to the presiding justice certain requested instructions based upon its claim that the plaintiff was estopped from the maintenance of this suit. It may be that the requested instructions were not as full and accurate in statement as they should have. been, but the whole question is presented, and perhaps may be more satisfactorily considered, upon the motion for a new trial.

The doctrine of equitable estoppel is founded upon the principles of equity and justice, and is applied so as. to conclude a party, who by his acts and admissions intended to influence the conduct of another, when, in good conscience and honest dealings, he ought not to be permitted to gainsay them. Formerly such estoppels were characterized by the decisions as odious and were not favored in law, "but, as said by Walton, J., in *Stubbs* v. *Pratt,* 85 Maine, 429, the doctrine of equitable estoppel has been very much extended within the last half century, and is now as freely applied in actions at law as in suits in equity, and it is a doctrine so well calculated to suppress fraud and oppression, that we do not wish to be understood as limiting its application in the slightest degree in proper cases." "Legal estoppels exclude evidence of the truth and the equity of the particular case to support a strict rule of law on grounds of public policy. Equitable estoppels are admitted on exactly the opposite ground of promoting the equity and justice of the individual case by preventing a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to

equity and good conscience for him to allege and prove the truth." *Martin* v. *Maine Central Railroad Company*, 83 Maine, 100, citing *Horn* v. *Cole*, 51 N. H. 287. But it is undoubtedly true that this doctrine of equitable estoppel should be applied with great care in each case, so that a person may not be debarred from the maintenance of a suit based upon his legal rights, unless the conduct relied upon as creating an estoppel has been of such a character, and has resulted in such injury to the person relying upon such conduct, that, in equity and good conscience, he should be thereby prohibited from enforcing the legal rights which he otherwise would have, nor unless in any given case all the elements exist which have been universally held to be essential for the purpose of creating an estoppel.

It is claimed upon the part of the plaintiff that this doctrine is not applicable to the present case, whatever may have been the conduct of the plaintiff, because the Savings Bank could not be estopped on account of any conduct upon its part, since it took no part whatever in, and had no knowledge of, the transaction, and that the plaintiff as assignee of the bank simply stood in its position. But the plaintiff is prosecuting this suit in his own name and for his own benefit; it had been expressly agreed between him and the bank that all sums received for this, and for other alleged conversions, should be paid to the bank and that it should be applied to the reduction of the plaintiff's indebtedness to the bank. It is undoubtedly true that the Savings Bank, as owner of the property, had a right of action for the severance and conversion of this gravel, and this right of action might be transferred by it, but not to a plaintiff, so that he could maintain an action for his own benefit, if his conduct had been such that the doctrine of equitable estoppel is applicable to him. It would hardly be contended that a person who had unlawfully and wrongfully sold a chattel which did not belong to him, and who had received the payment therefor, either in whole or in part, could afterwards purchase of the true owner the chattel, or the right of action for its conversion, and maintain trover against the one to whom he had wrongfully sold it, assuming to be the owner with the right to sell. The owner in such case would not of course be estopped, but the assignee should

be and would be upon the well established doctrine that a person will not be allowed to take advantage of his own wrong.

It is also strenuously claimed by the plaintiff that many, if not all, of the elements necessary to create an estoppel, even as to the plaintiff individually, are lacking in this case. We do not think so. Upon the contrary, in our opinion, all of the elements necessary to create an estoppel upon the part of the plaintiff do exist, and are so clearly shown by the uncontradicted facts and circumstances, that the action by this plaintiff is not maintainable, and that the verdict was unquestionably wrong.

At the time of the transaction between the plaintiff and Gerald, the plaintiff assumed to be the owner of the farm and to have a right to give the railroad company permission to remove material therefrom for the construction of its railroad. His affirmative acts and conduct were not only of such a character as to induce Gerald to believe that he was the owner and had the right to make this contract, but, by his silence, as well, he contributed to this belief. He in no way informed Gerald of his entire want of any right to make this contract or to give this permission. His conduct and silence were well calculated to give any reasonable person to believe, coupled with the fact that he was in possession of the farm, with all of the evidences of ownership, that he had such right. He had full knowledge of the fact that he had no right to make this contract. He must have known that the right of redemption had been fully foreclosed, because, not long before, in March, 1900, he had become a party to a lease from the bank to him of' these very premises. But, it is urged, that the plaintiff in thus assuming the rights of an owner in making the contract with Gerald, and in failing to give him notice of the true state of facts, acted innocently or thoughtlessly with no fraudulent design to mislead and deceive Gerald, and that he was ignorant of his legal rights, or want of them, in the premises. Assuming that this is so, it is no answer to the estoppel. It is undoubtedly true that the conduct, declarations or silence relied upon to create an estoppel, must be made to or in the presence of a person known to have an interest in the subject matter. *Allum* v. *Perry*, 68 Maine, 232, and must be of such a character as would naturally have the effect of influencing

the conduct of the person to whom it is addressed. *Fountain* v. *Whelpley,* 77 Maine, 132. But it is not necessary, in accordance with the prevailing rule, that the conduct creating the estoppel should be characterized by an actual intention to mislead and deceive. 11 A. & E. Encyl. of L. 2d. Ed., 431, citing many cases. And this was expressly decided by this court in *Martin* v. *Maine Central Railroad Company,* supra, in this language; "But it is not necessary that the original conduct creating the estoppel should be characterized by an actual intention to mislead and deceive." Neither would ignorance upon the part of the plaintiff of his legal rights, provided he had a full knowledge of the facts, be an answer to the estoppel relied upon. We, again, quote from *Martin* v. *Maine Central Railroad Company,* supra, "the presumption is that every person is acquainted with his own rights, provided he has had reasonable opportunity to know them; and nothing can be more liable to abuse than to permit a person to reclaim property, in opposition to all the equitable circumstances cited, upon the mere pretense that he was at the time ignorant of his title.". Citing Pom. Eq. Jur. Sec. 85; *Dixfield* v. *Newton,* 41 Maine, 221; *Cady* v. *Owen,* 34 Vt. 598.

It is also undoubtedly true that, in order to create an estoppel, the conduct, misrepresentations or silence of the person claimed to be estopped must be made to or in the presence of a person who had no knowledge of the true state of facts, and who did not have the same means of ascertaining the truth as did the other party. It is urged in this case that this essential requirement is lacking, because, while Gerald had no knowledge whatever of the ownership of the farm by the Savings Bank, he had the means of ascertaining the true state of the title by consulting the records of the Registry of Deeds in that county. It is true that a person will not be estopped merely by his silence and failure to disclose facts that may be ascertained by an examination of public records, when the situation is not such as to place upon him the duty of making known the truth. In such a case he may rely upon the notice given to all by the public records. *Mason* v. *Philbrook,* 69 Maine, 57. But where the situation is such that it is his duty to speak, as where inquiries are made of him, or, where, instead of merely remaining silent, he does some positive

affirmative act, which would naturally have the effect of misleading or deceiving one, then the mere fact that the truth can be ascertained by an examination of the records, does not prevent the operation of the estoppel against him. *Hill* v. *Blackwelder*, 113 Ill. 283; *Robbins* v. *Moore*, 129 Ill. 30; *Morris* v. *Herndon*, 113 N. C. 237; *David* v. *Park*, 103 Mass. 501; Pom. Eq. Jur., Vol. 2, sec. 895; 11 A. & E. Encyl. of L., 2d Ed., 436, and cases cited. The law distinguishes between silence and encouragement. While silence may be innocent and lawful, to encourage and mislead another into expenditures on a bad and doubtful title would be a positive fraud that should bar and estop the party. *Knouff* v. *Thompson*, 16 Pa. St. 364. In this case, the defendant relies not merely upon the plaintiff's silence and failure to disclose the truth, but equally upon his acts of positive intervention whereby he assumed to act as owner of the farm with a right to sell this material, and later to receive the pay therefor, at least in part. Gerald did not have the same means of information that the plaintiff had. The plaintiff knew that he was not the owner and had no right to sell this material, while Gerald had no knowledge of the truth, and his only means of obtaining knowledge as to the truth was to consult the records of the Registry of Deeds, something more than would be expected of a person of reasonable care in making this comparatively small purchase of road building material.

Relying upon his belief that the plaintiff was the owner and had the right to contract with him for the removal of the gravel, which belief the conduct of the plaintiff was well calculated to induce, Gerald acted and was placed in the position where he would be substantially injured if this action of trover can be maintained by the plaintiff, in this respect at least, if in no other. On Dec. 4, 1902, he paid the plaintiff, as we have seen, the sum of $25., either in full or partial payment for this gravel. It is urged by the plaintiff that this payment cannot be relied upon for the purpose of showing that Gerald or the Railroad Company was injured by reason of these representations, because of the rule undoubtedly well established, that representations made or acts done subsequent to the change of position by the other party, which they do not invite or influence, will

not operate as an estoppel. This principle is not applicable. The payment was made as a part of the original transaction, although some months after the gravel was taken. It was made to the plaintiff as owner because of the belief that he was owner. Up to that time, and for almost a year afterwards, Gerald had no knowledge or notice to the contrary. The conduct of the plaintiff at that time, in receiving this money as owner, and in inducing Gerald to believe that he had a right to so take it, and his silence in not informing Gerald at that time of the true facts, are a part of the conduct relied upon to work an estoppel. This payment was made and received almost a year prior to the assignment to the plaintiff from the bank, and prior to the commencement of this action, while the plaintiff was still treating the premises, in his transactions with Gerald, as the owner with a right to sell materials therefrom as he saw fit.

In regard to the receipt by the plaintiff of this payment, it further appears that at the trial of this case the counsel for the plaintiff made an offer that this sum of $25. might be deducted by the jury from any amount that should be found by them to be due from the defendant to the plaintiff. But this offer cannot at all affect the result. When this action was commenced the plaintiff was estopped from the maintenance of it by reason of the facts which we have referred to. Being thus estopped, he cannot prevent the operation of the estoppel by an offer made during the course of the trial to give credit in this action of trover for the sum of money which he had previously accepted as owner.

In a word, then the plaintiff, with full knowledge of all of the facts, by his conduct and his silence, well calculated to have that effect, induced Gerald, who had no knowledge, and did not have equal means of information, to believe that he, the plaintiff, had the right to contract for the sale of this gravel; he knew that Gerald was relying upon his conduct and would act upon the belief thereby induced; Gerald, relying upon this belief, did act and has been placed in a position of substantial injury, if this action of trover can be maintained.

Because of the facts stated, and for the reasons given, we are

satisfied that the verdict was wrong and should not be allowed to stand.

*Motion for new trial granted.   New trial ordered.*