THOMAS H. HOOPER *vs.* MINNIE R. BAIL.

York.     Opinion, May 29, 1935.

*Robert T. Smith,* for plaintiff.
*John G. Smith,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

STURGIS, J. This is a real action. The case is reported on an agreed statement of facts which shows that Jason C. Hooper, now deceased, on April 22, 1893, mortgaged the demanded premises with other lands which he then owned to the Saco & Biddeford Savings Institution, a banking corporation located at Saco, Maine. This mortgage was never foreclosed, but on December 23, 1908, was paid in full and discharged and on the same day the officers of the Bank executed a warranty deed of the demanded real estate to Ella M. Hooper, the wife of the mortgagor, and that deed was recorded five days later in the York Registry of Deeds. It does not appear who directed or requested the Bank to execute the warranty deed or caused the instrument to be recorded. Some of the officers of the Bank who acted in the matter are now deceased and the others can not remember the details of the transaction. Professions of belief that the deed would not have been executed without the mortgagor's consent have no evidential value.

It is also stated that Jason C. Hooper, who gave the mortgage to the Saco & Biddeford Savings Institution, died November 20, 1933, leaving a will thereafter duly admitted to probate, in which he devised the demanded real estate to Minnie R. Bail who is now in possession and is made the defendant in this action. Ella M. Hooper, the widow of the mortgagor, died intestate on December 6, 1933, leaving as her only heirs at law Thomas H. Hooper, the demandant, and one Roger Bail, who claim title and a right to possession of the premises under the warranty deed which their intestate received from the Bank.

The defendant pleads the general issue with a brief statement but with no specific plea of equitable matter included therein. By reporting the case, however, with no stipulation to the contrary, the parties must be held to have waived technical questions of pleading and equitable principles may be applied in defense of the action at law. *Hurd* v. *Chase*, 100 Me., 561, 564, 62 A., 660 ; *Savings Bank* v. *Hurley*, 117 Me., 211, 103 A., 234.

In the facts reported, the terms of the mortgage given by Jason C. Hooper to the Saco & Biddeford Savings Institution are not stated and it does not appear whether the payment of the mortgage to which reference has been made was before or after breach

of condition. If legal defenses only were to be considered, the omission of this fact would be important. By the common law as interpreted in this State, the mortgage deed under consideration conveyed to the Saco & Biddeford Savings Institution a legal estate in the premises and, while payment of the mortgage debt before condition broken might *ipso facto* divest the mortgagee of its title without reconveyance or other discharge and revest the legal estate in the mortgagor, payment after condition broken does not have that effect, but leaves the legal estate in the mortgagee to be held in trust for the mortgagor until released on demand. *Stewart* v. *Crosby*, 50 Me., 130. We are of opinion, however, that as the case is presented it should be governed by the rules and principles of equity as found in the Law and Equity Act. R. S., Chap. 96, Secs. 15-21, inclusive.

In equity, the doctrine has long prevailed that the debt is the substance and the mortgage securing it is a mere incident and, whatever the form of the mortgage, in reality the mortgagee has only a lien which retains that character until by proper foreclosure proceedings and the continued default of the mortgagor it is converted into a title so that payment of the mortgage debt at any time before foreclosure is perfected extinguishes the debt, the lien, and all interests of the mortgagee. *Hussey* v. *Fisher*, 94 Me., 301, 47 A., 525. Applying this rule in the case at bar, it is apparent that the deed of the Saco & Biddeford Savings Institution to Ella M. Hooper of December 23, 1908, conveyed no title to the mortgaged premises.

The demandant, however, sets up the claim that Jason C. Hooper, the original mortgagor of the premises in controversy, procured the execution and delivery of the deed from the Bank to his wife, Ella M. Hooper, and that the defendant as devisee under his will, as he was in his lifetime, is estopped in equity to deny the title of the grantee in that deed, which has now passed by inheritance to her heirs at law. He invokes the familiar principle that if a party knowingly, though he does it passively by looking on, suffers another to purchase land under an erroneous opinion of title without making known his claim he will not afterwards be permitted to exercise his legal right against such person who has been preju-

diced thereby. *Martin* v. *Maine Central R. R. Co.*, 83 Me., 100, 21 A., 740; *Power Company* v. *Rollins,* 126 Me., 299, 305, 138 A., 170. Aptly it has been said: "The doctrine of estoppel rests on an act that has misled one who relying on it has been put in a position where he will sustain a loss or injury." *Box Machine Makers* v. *Wirebounds Company,* 131 Me., 70, 159 A., 496. This rule of equity has been freely and repeatedly applied in proper cases both at law and in equity, but it has long been recognized that it must be applied with care and caution lest it encourage and promote fraud instead of preventing and defeating it. When a party is to be deprived of his property or his right to maintain an action by an estoppel, the equity ought to be strong and proof clear. *Rogers* v. *Street Railway,* 100 Me., 86, 60 A., 713; *Stubbs* v. *Pratt,* 85 Me., 429, 27 A., 341; *Martin* v. *Maine Central R. R. Co.,* supra. "Every estoppel because it concludeth a man to allege the truth must be certain to every intent, and not to be taken by argument or inference." *Coke Litt.,* 352b. See 21 *Corpus Juris* 1139 and cases cited.

In the case at bar, the attempted conveyance of the demanded premises to Ella M. Hooper by the Saco & Biddeford Savings Institution is veiled in uncertainty. Why or for what purpose that deed was given is not made clear. There is no fact stated which compels the conclusion that Jason C. Hooper, who held the title to the mortgaged premises and after payment of the mortgage alone could make a valid conveyance of them, directed the execution of the deed from the Bank. That he may have done so is only surmise. He undoubtedly knew of the existence of the deed for the record at the Registry gave him constructive notice and, as the case shows, the instrument after record was deposited in a metal box which he and his wife used in common for the safe-keeping of valuable papers and of which they had common possession. Assuming that he procured the execution of the deed to his wife, did he intend and attempt to effect a bona fide transfer of the title to her as a gift or advancement or otherwise, or for his own purposes and ends was he creating a cloud upon his title and no more? The field of conjecture is still wider. There is no direct proof that the deed was delivered. Its record in the Registry of Deeds, standing alone, has limited evidential value on this point. It does not rise to the dignity

of prima facie proof. *Egan* v. *Horrigan*, 96 Me., 46, 51 A., 246; *Hill* v. *McNichol*, 80 Me., 220, 13 A., 883. There is no stated fact tending to prove who procured the record of the deed or who received it back from the Registry. Thereafter, apparently, it was kept in a receptacle to which both Jason C. Hooper and his wife had access, a situation which furnishes an insufficient basis for inferring that either had actual possession of the instrument. A presumption of delivery can not be predicated on so doubtful a possession by the grantee named in the deed.

Nor is it made to appear that the demandant's intestate relied upon her husband's participation in the execution of her deed from the Bank and was misled thereby to her prejudice. So far as the report discloses, she never in her lifetime claimed to own the demanded premises or in her own right attempted to exercise any control or dominion over them. She made no improvements and expended no money upon them. She and her husband lived together on the land until he died. He treated the property as his own in his will and devised it to his chosen beneficiary. She attempted no testamentary disposition of it. On the facts stated in this case, essential elements of equitable estoppel are lacking.

According to the stipulations of the report, the defendant, being rightfully in possession of the demanded premises, is entitled to judgment.

*Judgment for the defendant.*