BOSTON AND MAINE RAILROAD

*vs.*

HANNAFORD BROS. CO. AND
CASCO BANK AND TRUST COMPANY, TRUSTEE

Cumberland.    Opinion, August 18, 1949.

*E. S. Miller,*
*Hutchinson, Pierce, Connell, Atwood, and Scribner,*
for plaintiff.

*Leonard A. Pierce and Sigrid E. Tompkins,* of counsel.

*Frank P. Preti,* for defendant.

SITTING: THAXTER, FELLOWS, MERRILL, WILLIAMSON, JJ.

MERRILL, J. On exceptions. This case is before the court on exceptions to the direction of a verdict in favor of the plaintiff by the presiding justice. The amount is not in dispute. The action was brought by the Boston and Maine Railroad, the delivering interstate carrier, to recover transportation charges on four carloads of bananas delivered by it to the defendant, Hannaford Bros. Co. One of these carloads was shipped, without prepayment of freight, by Lord and Spencer Company of Boston from Laredo, Texas, to the defendant. This car was carried from Boston to Portland by the plaintiff carrier and delivered to and unloaded by the defendant on October 14, 1943. The defendant admits ownership of the shipment in this car. On October 3, 1943, four other cars loaded with bananas were shipped without prepayment of freight from Laredo, Texas, by Pan American Banana Producers. "Advice Lord and Spencer, all charges guaranteed by shipper." On October 14, 1943, Lord and Spencer notified the plaintiff to divert these cars to the defendant at Portland, "all charge to follow the cars." The defendant accepted delivery of these shipments from the plaintiff on October 15, 1943 and unloaded the cars. The defendant received these four carloads as agent only of Lord and Spencer and had no beneficial title in the property. In accordance with rules and regulations of the Interstate Commerce Commission, the plaintiff carrier had an arrangement whereby the defendant was allowed a period

not exceeding ninety-six hours after delivery within which to pay transportation charges upon freight delivered to it by the plaintiff. Within this period after the delivery of these carloads of bananas to the defendant, the plaintiff presented to it freight bills for the transportation charges thereon. As to the four carloads which it received as agent, the representative of the defendant who received the freight bills testified as follows:

> "On the arrival of the freight bills I called Mr. Mc-Duffie, cashier of the Boston & Maine railroad and told him the cars were not ours because they were commission cars and to make collection from Lord & Spencer and he advised me to write it on the statement that I was returning for colletcion from Lord & Spencer, which I did."

It is not clear from the evidence whether the statement was written on the bills or in the form of an independent statement. The statement or statements were not introduced in evidence by either party. The defendant also requested the plaintiff to collect from Lord and Spencer the freight charges on the car which it received on its own account.

The testimony disclosed that prior to the receipt of the carloads of bananas in question the defendant had previously received on its own account some twenty carloads of bananas from Lord and Spencer, and that at its request the railroad had collected transportation charges thereon from Lord and Spencer.

The plaintiff after the defendant had returned the freight bills to it, attempted to collect the same from Lord and Spencer and succeeded in collecting the total charges upon one of the commission cars and a portion of the charges on another. This left unpaid the total charges on three cars, including the carload received by the defendant on its own account, and a portion of the charges on a third car received on commission, amounting in all to $2,048.35.

Some thirteen months after the return of the freight bills to the plaintiff, during which time it had been endeavoring to collect the same, Lord and Spencer informed the plaintiff that it was unable to pay the bills. The plaintiff notified the defendant that Lord and Spencer were financially embarrassed and not in a position to pay the bills and demanded payment of the bills from the defendant. Payment being refused, this action was brought to recover the balance of the transportation charges amounting to $2,048.35. The defendant admitted the legality of the charges according to filed tariffs and its liability therefor unless absolved from payment by its notice to the plaintiff, the return of the bills to the plaintiff for collection from Lord and Spencer and the conduct of the plaintiff subsequent to the receipt by the defendant of the freight bills. The defendant claimed that the plaintiff discharged it from its liability for these transportation charges by its consent to the return of the freight bills to it for collection from Lord and Spencer, and by attempting to collect from Lord and Spencer, and by its failure to notify the defendant within a reasonable time thereafter of its inability so to do, during which time the defendant claims it had funds of Lord and Spencer in its hands from which it could have retained sufficient moneys to discharge its liability for these transportation charges, which funds it remitted to Lord and Spencer.

The plaintiff in addition to relying upon absolute liability of the defendant under applicable federal legislation, claimed that its action in attempting to collect transportation charges from Lord and Spencer was undertaken only as a favor to the defendant who was absolutely liable for the charges and that it did not constitute a novation. To the claim that the defendant paid money in its hands to Lord and Spencer which it could have retained to discharge its liability for these transportation charges, it replies that even if this be true the defendant before it paid said funds to Lord and Spencer could at any time have ascertained

from the plaintiff the progress of collection from Lord and Spencer, and that there was no estoppel in favor of the defendant. While the defendant has asserted that it had sufficient funds in its hands belonging to Lord and Spencer from which it could have retained a sufficient amount to reimburse itself for these charges, had the plaintiff within a reasonable time notified it of its failure to collect from Lord and Spencer, there is no direct evidence of this fact. All evidence directed thereto was excluded by the presiding justice. Exceptions to this exclusion were taken by the defendant, but these exceptions were not brought forward to this court and were thus abandoned. While the defendant did testify that these cars of bananas were received on a commission basis for Lord and Spencer and that it had remitted all sums to Lord and Spencer, there is no testimony in the record as to when funds belonging to Lord and Spencer were received by the defendant or when the same were remitted by it to Lord and Spencer, nor is there any evidence in the case as to the amount of said funds if any which it had had in its hands. Nor is there evidence showing that had it been notified of its failure to collect by the plaintiff, that it *could* have made collection itself.

The consignee of property transported in interstate commerce by acceptance of delivery makes himself liable for the transportation charges. *Pittsburg, etc. Ry. Co.* v. *Fink,* 250 U. S. 577; 40 S. Ct. 27; 63 L. Ed. 1151; *L. & N. R. Co.* v. *Central Iron Co,* 265 U. S. 59, 70; 44 S. Ct. 441; 68 L. Ed. 900. This is the general rule. By appropriate Federal Statute, 49 U. S. C. A. 3 (2nd), a consignee who is agent only, and who has no beneficial ownership in the property transported may avoid liability for the transportation charges by compliance with its terms. The statute contains the following provision:

"Where carriers by railroad are instructed by a shipper or consignor to deliver property transported by such carriers to a consignee other than the shipper or consignor, such consignee shall not

be legally liable for transportation charges in respect of the transportation of such property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him, if the consignee (a) is an agent only and has no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title, and, in the case of a shipment reconsigned or diverted to a point other than that specified in the original bill of lading, has also notified the delivering carrier in writing of the name and address of the beneficial owner of the property. In such cases the shipper or consignor, or in the case of a shipment so reconsigned or diverted, the beneficial owner, shall be liable for such additional charges irrespective of any provisions to the contrary in the bill of lading or in the contract under which the shipment was made."

This statute has no application to the car received by the defendant upon its own account. It would apply to the four cars received by the defendant on a commission basis as it received them only as agent and had no beneficial ownership in the property. Had the defendant taken appropriate steps and complied with the provisions of this statute, it could have avoided liability for the charges. The defendant does not claim that it complied with the terms and conditions of this statute, and the evidence clearly shows that it did not. It took no action whatsoever prior to its acceptance of the delivery of the goods transported. By its acceptance of delivery without availing itself of the provisions of this statute, the defendant made itself liable for the transportation charges upon the four cars which it received as agent only and without beneficial ownership in the property transported. There was no difference between the defendant's liability for the transportation charges on the car which it received upon its own account and the ones which it received as agent once the liability became fixed.

By 49 U. S. C. A. Sec. 3 (2nd) it is provided in part as follows:

> "No carrier by railroad subject to the provisions of this chapter shall deliver or relinquish possession at destination of any freight transported by it until all tariff rates and charges thereon have been paid, except under such rules and regulations as the commission may from time to time prescribe to assure prompt payment of all such rates and charges and to prevent unjust discrimination."

The fact that under appropriate rules and regulations of the Interstate Commerce Commission the plaintiff allowed the defendant to accept delivery of freight without first paying the transportation charges, and allowed it a period of not exceeding ninety-six hours within which to pay the same, did not extend the time within which the defendant could file notice of non-beneficial ownership. If the defendant, as agent only and non-beneficial owner, wished to take advantage of the provisions of 49 U. S. C. A. Sec. 3 (2nd) *supra,* it was necessary that it comply with the terms and provisions thereof.

The defendant once having made itself liable for the transportation charges on these cars, that liability continued unless discharged. There is no suggestion in the record that such discharge has been effected by compliance with any applicable statute, rule or regulation of the commission, or even that such statute, rule or regulation exists.

There is no evidence from which the jury could have found a contract of novation by which the plaintiff agreed to discharge the defendant from its liability for these transportation charges and look only to Lord and Spencer for payment thereof. Even if such contract would be enforcible under applicable Federal Law, upon which we intimate no opinion, a finding of the existence of such a contract upon the record could not be sustained.

Nor is the evidence sufficient to sustain a finding that the plaintiff is estopped to collect these transportation charges from the defendant even if an estoppel would or could be recognized under applicable Federal Law, as a bar to the collection of these charges, a question upon which we need intimate no opinion.

From the record it appears that the defendant upon receipt of these freight bills, for which it had already become liable, returned them to the plaintiff with a request that it collect them from Lord and Spencer. The plaintiff made some twenty to twenty-five calls upon Lord and Spencer in attempting to collect from them, and eventually, a little more than a year after the return of the bills, being unable to collect the balance in question, returned them to the defendant and demanded payment. Accepting the bills from, and attempting to collect them for the defendant would not estop the plaintiff from enforcing its liability against the defendant. Nor, as above stated, did it amount to a novation discharging the defendant. The defendant bases its defense upon the fact that the plaintiff remained silent as to its progress in collecting from Lord and Spencer. In other words, the defendant seeks to set up an equitable estoppel, often called an estoppel *in pais*, based upon the silence or inaction of the plaintiff.

The doctrine of equitable estoppel was well stated by this court in *Hooper* v. *Bail*, 133 Me. 412, 416; 179 A. 404, 406, in the following language:

> "Aptly it has been said:—'The doctrine of estoppel rests on an act that has misled one who relying on it has been put in a position where he will sustain a loss or injury.' *Box Machine Makers* v. *Wirebounds Company*, 131 Me. 70; 159 A. 496, 499. This rule of equity has been freely and repeatedly applied in proper cases both at law and in equity, but it has long been recognized that it must be applied with care and caution lest it encourage and promote fraud instead of preventing and defeating it. When a party is to be deprived of his property

or his right to maintain an action by an estoppel, the equity ought to be strong and proof clear. *Rogers* v. *Street Railway,* 100 Me. 86, 60 A., 713; 70 L.R.A. 574; *Stubbs* v. *Pratt,* 85 Me., 429, 27 A., 341; *Martin* v. *Maine Central R. R. Co.,* supra. 'Every estoppel because it concludeth a man to allege the truth must be certain to every intent, and not to be taken by argument or inference.' *Coke Litt.,* 352b. See 21 *Corpus Juris* 1139 and cases cited."

Again, we said in *Rogers* v. *Street Railway,* 100 Me. 86, 91; 60 A. 713, 715; 70 L. R. A. 574:

"But it is undoubtedly true that this doctrine of equitable estoppel should be applied with great care in each case, so that a person may not be debarred from the maintenance of a suit based upon his legal rights, unless the conduct relied upon as creating an estoppel has been of such a character, and *has resulted in such injury to the person relying upon such conduct,* that, in equity and good conscience, he should be thereby prohibited from enforcing the legal rights which he otherwise would have, nor unless in any given case *all the elements exist which have been universally held to be essential for the purpose of creating an estoppel.'* (Emphasis ours.)

These general princpiles of equitable estoppel are so well recognized that further citation respecting them is unnecessary.

The burden of proof is upon the one who asserts the estoppel. This burden must be maintained by proof that is clear. *Hooper* v. *Bail, supra; Lagrange* v. *Datsis,* 142 Me. 48; 46 A. (2nd) 408, 410. Not only must the proof be clear but estoppel cannot rest upon mere conjecture. *Augusta Trust Co.* v. *Railroad Co. et als.,* 134 Me. 314, 329; 187 A. 1. This rule as to the quantum of proof, which is another way of stating that the proof of an estoppel must be full, clear and convincing, applies to every essential element necessary to the creation of estoppel. The estoppel here sought to be

enforced against the plaintiff is based upon its failure to report to the defendant, within a reasonable time after receiving the freight bills in question, its failure to make collection. In other words, the defendant relies upon an estoppel based upon silence. Silence may give rise to estoppel but only when there is a duty to speak. Furthermore, as said by this court in *Denison* v. *Dawes,* 121 Me. 409; 117 A. 314, 317:

> "Silence alone will not constitute an estoppel unless it appears that it is known that it will be acted upon to the injury of the other party or is maintained with a deliberate intent to deceive, or to obtain an advantage. The burden of proving the facts to establish it is upon those who claim it. *Hunt* v. *Reilly,* 24 R. I., 68; 10 R.C.L. 692, Sec. 21; 52 A. 681, 59 L.R.A. 206."

As said in 19 Am. Jur. 662:

> "There must be some element of turpitude or negligence connected with the silence or inaction by which the other party is misled to his injury. In other words, to give rise to an estoppel by silence or inaction, there must be a right and an opportunity to speak and, in addition, an obligation or duty to do so.
>
> The mere fact that another may act to his prejudice if the true state of things is not disclosed does not render silence culpable or make it operate as an estoppel against one who owes no duty of active diligence to protect the other party from injury."

As well stated in 19 Am. Jur. Sec. 85, Page 735:

> "Estoppel rests largely upon injury or prejudice to the rights of him who asserts it. Since the function and purpose of the doctrine are the prevention of fraud and injustice, there can be no estoppel where there is no loss, injury, damage, or prejudice to the party claiming it. Moreover, the injury or prejudice involved must be actual and substantial, and not merely technical or formal. xxxxxxxx The rule that estoppel arises only where

> there is prejudice applies whether the estoppel is based upon words, conduct, silence, delay, negligence, or acceptance of benefits."

On the record as presented to us there is no clear evidence that the defendant has been prejudiced by the failure of the plaintiff to report within a reasonable time its failure to collect from Lord and Spencer. The plaintiff for more than a year, at the request of the defendant, was attempting to collect these charges from Lord and Spencer, and was being promised payment by them, and succeeded in collecting a substantial sum upon the claim. If the defendant at any time saw an opportunity or had an opportunity to collect from Lord and Spencer it could easily have made inquiry from the plaintiff as to its progress in the matter. There is no evidence in the record which would justify a jury in finding that had the plaintiff, within a reasonable time, notified the defendant of its inability to collect from Lord and Spencer that the defendant itself could have collected the charges from Lord and Spencer and thus discharged its own liability therefor. There is no evidence in the case which would justify a finding by the jury that the defendant had suffered prejudice by the action or inaction of the plaintiff of which it complains.

There were no disputed facts in this case. "The rule is well established that it is a question of law for the court; in any proceedings, even though the case may involve a trial by jury, whether the facts constitute an estoppel, if the facts are undisputed." 19 Am. Jur. Sec. 200, Page 855. No estoppel existed in this case. There being neither novation nor estoppel in this case, we have no need to determine whether either by novation or by estoppel, under applicable Federal Law the plaintiff *could* have thereby discharged the defendant from its liability for these freight charges.

The defendant, as to the four carloads of bananas in which it had no beneficial title, alleges that the shipper, Pan American Banana Producers, was primarily liable for the transportation charges, and cites authorities sustaining this

position. Under the bills of lading used, this is true. The shipper was obligated to pay the transportation charges, and this liability, *as between itself and the carrier,* was primary and not secondary to that of anyone else. The same thing is true of the liability of the defendant. By accepting delivery of these carloads of bananas, without availing itself of 49 U. S. C. A. 3 (2nd) it became obligated to pay these transportation charges and its liability therefor *as between itself and the carrier was primary and not secondary* to that of anyone else.

These two obligations, of the consignor and the consignee respectively, are independent obligations to the carrier. So far as the carrier is concerned, neither of these obligations is subordinate to the other. The obligation of the consignor arises from his express contract to pay contained in the bill of lading which among other things states "the consignor shall be liable for the freight, etc.," except under certain conditions not present in this case. The liability of the consignee is founded upon an implied contract to pay the freight, which is founded upon his acceptance of the shipment.

In discussing the relative liability of a consignor and one who accepted delivery of freight shipped on a bill of lading like that in the instant case, the court said in *Atchison T. & S. F. Ry. Co.* v. *Hunt Bros. Fruit Co.,* 34 Fed. (2nd) 582, 583:

> "The liability of the defendant (consignor) arising from the written contract, and that of McNeill (who as assignee of the bill of lading accepted delivery) arising from an implied contract, *are independent of each other. Neither is subordinate to the other.* Before the defendant can successfully maintain that its liability is subordinate to McNeill's, it must point to something in its contract with the plaintiff so providing. It cannot do that." (Emphasis ours.)

It may well be that as between the consignee and the consignor, the consignor should reimburse the consignee for

transportation charges which the consignee pays to the carrier, even though the consignee's liability to the carrier is a primary one. As between each other the liability may be the secondary obligation of the consignee and the primary obligation of the consignor. But the nature of the rights of the consignor and consignee *inter sese* does not determine the nature of their respective obligations *to the carrier*. Here, *as between themselves and the plaintiff*, the shipper and the defendant were *each* primarily liable to the plaintiff for these transportation charges.

As the liability of the defendant to the plaintiff was a primary one, the plaintiff could proceed against it without first making a demand upon or exhausting its remedy against the shipper. It is only when the *defendant* is secondarily liable *to the plaintiff* that it can interpose the defense that the plaintiff has made no demand upon or has not exhausted its remedy against the one whose liability to the plaintiff for the same obligation is a primary one.

The defendant has assumed that because the liability of the shipper *to the carrier* is primary, that of the consignee *to the carrier* must be secondary. In this it is in error. This erroneous major premise leads to its erroneous conclusion that failure on the part of the plaintiff to make a demand upon or to exhaust its remedies against the shipper is a bar to recovery against the defendant.

The defendant's arguments based upon the primary liability of Pan American Banana Producers are without merit and there was no question of fact in connection therewith which should have been submitted to the jury.

There was no evidence from which a novation could be found. Nor did the evidence require that the question of estoppel be submitted to the jury. The undisputed *admitted* evidence negatives the existence of an estoppel. The court below excluded all evidence tending to show that the defendant suffered damage by the action or inaction of the

plaintiff upon which the defendant's claim of an estoppel is grounded. It excluded all evidence tending to show that the plaintiff could have reimbursed itself for the charges in question from funds in its hands belonging to Lord and Spencer, or that it could have otherwise collected these funds from Lord and Spencer, had it been seasonably notified by the plaintiff of the progress of its efforts to collect from Lord and Spencer. The defendant took exception to the exclusion of such testimony. It is undoubtedly true that the court excluded this testimony on the theory that under applicable Federal Law, *the defendant* having become absolutely liable for the transportation charges by acceptance of the delivery without availing itself of the provisions of 49 U. S. C. A. Sec. 3 (2nd), *the plaintiff* could not thereafterwards estop itself from asserting its legal right to collect these charges from the defendant. Had these exceptions been brought forward to this court, we would of necessity have to decide this issue of law. The decision of this issue would be necessary in determining the question as to whether or not the defendant was prejudiced by the exclusion of the testimony. The defendant, failing to perfect these exceptions by including them in its bill of exceptions, abandoned them. We are confined in our determination of exceptions to the bill of exceptions presented.

Having held that the record as presented to us would be insufficient to sustain the existence of an estoppel against the plaintiff, the question of whether or not under applicable Federal Law the plaintiff *could* estop itself from enforcing the liability of the defendant for these transportation charges is immaterial and decision thereof is unnecessary to the determination of the validity of the defendant's exceptions to the direction of a verdict for the plaintiff.

The ruling of the presiding justice directing a verdict for the plaintiff *on the evidence in the record* was correct. The defendant takes nothing by its exceptions.

*Exceptions overruled.*