**SOUTHERN RAILWAY SYSTEM,**
Plaintiff,

v.

**LEYDEN SHIPPING CORPORATION,**
Habag Corporation and Paul A.
Boulo, Defendants.

No. 68 Civ. 18.

United States District Court
S. D. New York.

Sept. 23, 1968.

Bleakley, Platt, Schmidt, Hart & Fritz, New York City, for plaintiff; Robert L. Conkling, and Peter W. Flanagan, New York City, of counsel.

Doman & San Filippo, New York City, for defendant Habag Corp.; Nicholas R. Doman, and Henry O. Leichter, New York City, of counsel.

MANSFIELD, District Judge.

In this action by a railroad carrier for recovery of demurrage charges incurred on 53 car loads of pig iron shipped from Birmingham, Alabama to Mobile, Alabama, where they were to be exported by sea, the defendant Habag Corporation ("Habag" herein), purchaser of 36 of the car loads, moves pursuant to Rule 12(b) (6) and (7), F.R. C.P., to dismiss the complaint for failure to state a claim upon which relief can be granted and for failure to join indispensable parties. Since the motion, insofar as it is based on Rule 12(b) (6), is based on matters outside of the pleadings which have been presented to and not excluded by the Court, it is treated as one for summary judgment as provided in Rule 56. The undisputed facts as presented in the parties' papers are as follows:

On January 12, 1965, United States Pipe and Foundry Company ("U. S. Pipe" herein), shipper, delivered 53 cars of pig iron to the plaintiff at Birmingham, Ala., for shipment to defendant Paul A. Boulo of Mobile, Ala., consignee, pursuant to a standard form of straight bill of lading which listed U. S. Pipe as the shipper and Boulo as consignee and, in an attached schedule, disclosed the identity of various orders making up the shipment, including order number, weight, freight car number, etc. Thirty-six of the 53 car loads contained pig iron which the defendant Habag had agreed to purchase from Debevoise-Anderson Company, agents

engaged in the handling of pig iron, ore, limestone, coke and alloys. This purchase was confirmed by Debevoise-Anderson's sales invoice dated January 12, 1965 listing the order numbers used by Habag and Debevoise-Anderson and stating that the pig iron was sold by Debevoise-Anderson to Habag "FAS Vessel, Mobile, Alabama" and shipped "Consigned: Paul A. Boulo," the terms being "net cash on presentation of documents." Neither the invoice nor the other papers submitted by the parties disclosed whether Debevoise-Anderson was acting on its own behalf or on behalf of U. S. Pipe in making the sale, and there is no indication that title or beneficial ownership had passed to Habag or was to pass to it prior to the arrival of the goods in Mobile, Ala., and their being placed alongside of the vessel for export.

Where goods are shipped by railroad carrier to the Port of Mobile for export, the carrier normally is required, in order to avoid confusion, to keep cars containing the merchandise outside of the Alabama state docks until a permit is issued, whereupon the cars enter the dock area and the cargo is unloaded onto the dock and then onto the ship by terminal-moving facilities of the Alabama docks. In this case 53 car loads of pig iron reached Mobile but were not placed on the wharfs for the reason that at 12:01 A.M. on January 11, 1965 a longshoremen's strike was called, with the result that the cars, which arrived in Mobile in sections during the period from January 12 to January 15, 1965, were detained outside of the docks until the middle of February 1965 when the longshoremen's strike ended, whereupon they were unloaded and placed aboard a ship for export.

In the meantime, on January 15, 1965, plaintiff sent a freight bill to Boulo, the consignee, in the sum of $11,981 for freight charges incurred in shipping the goods from Birmingham to Mobile. On January 18, 1965 Boulo refused the entire shipment, including the 36 cars containing the iron ordered by Habag, on the ground that plaintiff had improperly accepted the cars for shipment in violation of an embargo issued on January 12, 1965 by the Association of American Railroads on account of the strike.

As a result of the one month's delay occasioned by the longshoremen's strike, demurrage charges were incurred which plaintiff was obligated to collect from the shipper or consignee as extended freight in the absence of an agreement to exonerate pursuant to §§ 3(2) and 6(7) of the Interstate Commerce Act, 49 U.S.C. §§ 3(2) and 6(7). See Pennsylvania R. R. Co. v. Moore-McCormack Lines, Inc., 370 F.2d 430 (2d Cir. 1966); St. Louis Southwestern R. R. Co. v. Mays, 177 F.Supp. 182 (E.D.Ark.1959).

■ Insofar as Habag's motion is based on the contention that plaintiff has failed in violation of Rule 19, F.R. C.P., to join as indispensable certain parties who might be held liable over to Habag or the plaintiff for alleged violation of the embargo placed on shipments to Mobile on January 11, 1965, neither dismissal nor summary judgment is warranted. The opposing affidavit of plaintiff's counsel raises issues of fact with respect to the allegation that the embargo was violated. Furthermore, the consignee's obligation to pay freight charges on goods delivered to it, in the absence of exoneration, is an independent one, see Louisville & Nashville R.R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924), and there is no requirement that a carrier proceed first or jointly against others liable for freight charges, including demurrage. Boston & Maine R.R. v. Hannaford Bros., Inc., 144 Me. 306, 68 A.2d 1 (1949). Thus even if the plaintiff here, for business reasons, sought collection from the consignee Boulo rather than from parties who might be primarily liable, such as the shipper, joinder of the shipper or consignor is not dictated by Rule 19.

To the extent that Habag's motion is based upon failure to show facts warranting relief, a more serious question

is presented. The complaint does not spell out the theory on which plaintiff seeks to hold the three defendants liable for the demurrage charges other than to state that plaintiff received the 53 railroad cars "from or on behalf of defendants or some of them * * * for delivery to defendants or some of them for export at the port of Mobile, Alabama" and that such cars were "duly delivered to defendants or their agent" at the said port. Plaintiff now contends that Habag is responsible for the demurrage (1) as the beneficial owner of 36 cars of the shipment and (2) as the principal of Boulo, the consignee.

■ The records furnished by the parties to the Court indicate that Habag was not the owner of the merchandise at the time when the demurrage charges were incurred. According to the invoice issued by Debevoise-Anderson, the shipment was made "FAS Vessel, Mobile, Alabama" (i. e., "free along side" the vessel), which would require the seller at its own expense and risk to deliver the goods alongside the vessel, title not passing until such delivery was made, either under the Uniform Sales Act, § 19, which was in effect in Alabama at the time of the transaction, or under the Uniform Commercial Code, §§ 2–319, 2–401, adopted by Alabama in 1967. See Kokomo Steel & Wire Co. v. Republic of France, 268 F. 917 (7th Cir.), cert. denied, 254 U.S. 657, 41 S. Ct. 320, 65 L.Ed. 461 (1920). Plaintiff's freight bill, which is addressed to Boulo, states that the cars were to be transported to Mobile but not to be delivered by plaintiff to the ship side, thus indicating that Boulo was acting on behalf of the seller and would be responsible for the last step prior to export, i. e., the unloading of the goods at ship side, whereupon title would pass to Habag.

■■ Regardless whether Habag was the beneficial owner at the time when the demurrage charges were incurred, however, its mere ownership of the shipment would not render it liable for the freight charges or demurrage. American Railway Express Co. v. Mohawk Dairy Co., 250 Mass. 1, 144 N.E. 721, 35 A.L.R. 14 (1924); Brown Transport Corp. v. United Merchants & Mfgrs., Inc., 21 A.D.2d 303, 250 N.Y.S. 2d 440 (1st Dept. 1964). Such liability may be created only by contract or statute, neither of which impose liability under the circumstances in this case. Furthermore, in the absence of a contractual basis, § 3(2) of the Interstate Commerce Act imposes liability upon a beneficial owner for freight and demurrage only where there has been a reconsignment or diversion of a shipment accompanied by a written notification to the delivery carrier of the name and address of the beneficial owner. See Brown Transport Corp. v. United Merchants & Mfgrs., Inc., supra.

Thus, insofar as plaintiff seeks to hold Habag responsible for demurrage charges solely as beneficial owner, summary judgment is warranted.

Turning to plaintiff's second theory, that Habag may be held responsible as Boulo's principal (whether disclosed or undisclosed is not made clear), Habag's President has submitted his affidavit to the effect that Boulo was not acting as Habag's representative. This statement is corroborated by the shipping papers furnished by the parties, which indicate that Boulo is a forwarding agent who was employed and designated by the shipper, U. S. Pipe, rather than by Habag. Furthermore, Boulo was acting as consignee not only of the 36 car loads ordered by Habag but of the balance of the 53 car loads, which contained pig iron ordered by six other purchasers. Boulo's status as a representative of the shipper is further evidenced by the payment terms, "FAS Vessel, Mobile, Alabama" which indicate that the shipper continued to assume responsibility up to the point where the cars were to be placed on the Mobile dock after acceptance of delivery by Boulo and by the fact that freight was prepaid by the shipper, presumably to be absorbed along with any other shipping

charges such as demurrage in the purchase price. Lastly, Habag had employed its own forwarding agent, defendant Leyden Shipping Corporation, to arrange for an ocean bill of lading on the S.S. Whitehall after the cargo would be delivered FAS Vessel at the Mobile docks, a step that would appear unnecessary if (as plaintiff contends) plaintiff had already employed Boulo, another forwarding agent, as its agent.

In the face of the foregoing facts in support of Habag's motion, plaintiff rests on nothing more than its general allegation of agency which is insufficient to defeat a motion for summary judgment, see Duarte v. Bank of Hawaii, 287 F.2d 51 (9th Cir.), cert. denied, 366 U.S. 972, 81 S.Ct. 1938, 6 L.Ed.2d 1261 (1962); United States v. Spice N Nice, Inc., 262 F.Supp. 627 (S.D.N.Y.1967), rather than affidavits setting forth "facts as would be admissible in evidence" as required by Rule 56(e), F.R.C.P.

Although the record in its present state is probably adequate to support Habag's motion, the Court prefers to give both sides, in accordance with Rule 56(f), an opportunity to furnish additional facts with respect to the alleged principal-agent relationship between Habag and the consignee, Boulo, before rendering a final decision and therefore orders a continuance for such purpose until October 21, 1968. Of particular interest to the Court would be affidavit or deposition proof of the following:

1. Copies of Debevoise-Anderson order No. X-4064, Habag's order No. ENY 99/281 and any other correspondence or documents evidencing the terms of Habag's purchase of the pig iron contained in the 36 cars that were the subject of the demurrage charges;

2. The nature of the relationship between Debevoise-Anderson and U. S. Pipe, insofar as transactions here under consideration are concerned;

3. Boulo's employment, and the nature of its relationship with Ha-

bag, Heyden, U. S. Pipe and Debevoise-Anderson; and

4. Time when Habag acquired ownership of the pig iron involved. So ordered.