GEORGE M. TOWER *vs.* ALVAH HASLAM.

Hancock.    Opinion December 8, 1891.

*Exceptions.   Practice.   Estoppel.   Instructions.   New Trial.   Damages.*

Generally the Law Court can act upon a bill of exceptions only in the form as made up and allowed at *nisi prius*; but the stenographer's report when expressly made a part of the bill, must control the allegations of fact if there be a conflict.

Requested instructions not based upon the facts proved, are properly refused.

Requested instructions must be complete and correct as an entirety, otherwise they are properly refused.

However well calculated the conduct of one may be to influence another to act in a particular manner, no estoppel can arise unless he who alleges it was thereby induced to and did in fact act.

Where the conditional purchaser of a buckboard gave to the plaintiff therefor one promissory note for seventy-nine dollars and a Holmes note for sixty-one dollars, and subsequently paid a part of the former and gave a new note for the balance, in trover for the conversion of the board by a third person; *Held*: That an instruction that, "the plaintiff could recover, if anything, the amount due on the Holmes note and the new note, provided such amount did not exceed the value of the buckboard at the time of the conversion," afforded the defendant no cause for exception.

A motion to set aside a verdict as being against the manifest weight of evidence, is not generally sustained, when the evidence is conflicting and the verdict is sustained by the positive testimony of two or more witnesses.

ON MOTION AND EXCEPTIONS.

This was an action of trover for a buckboard.    Date of writ, October 10, 1890.    The plaintiff's title was under a Holmes note from Thomas T. Dorr, dated June 25, 1887, recorded July 29, 1887.    The defendant's title was under a sale and delivery of the buckboard from Dorr to one Penney and from Penney to the defendant.    It was not disputed that the defendant purchased in good faith.    From the bill of exceptions it appears :

1.    The defendant contended that the sale and delivery of the buckboard from Dorr to Penney was prior to the date of the record of the plaintiff's note.    All his witnesses so testified. Dorr and Penney, witnesses called by the defendant, also testified in effect that they made this trade for the sale of the buckboard to Penney, in the presence of the plaintiff, and that Penney asked the plaintiff if he had any claim on the buckboard, and

that the plaintiff answered in the negative. The defendant's counsel in his argument to the jury did not admit that the sale might have been after the date of the record of the note, but based his defense on the proposition that the said sale was prior to that date. The defendant's counsel, however, requested the presiding justice to instruct the jury, that if the sale from Dorr to Penney was made in the presence of the plaintiff, and the plaintiff did not disclose his claim, but said he had no claim to the buckboard, then the plaintiff was estopped from setting up any claim against Penney or his vendee, the defendant. The presiding justice did not give the requested instruction, but did instruct the jury that if the sale and delivery of the buckboard by Dorr to Penney were prior to the date of the record of the note, the plaintiff could not recover even though Penney had other actual notice of the plaintiff's claim; and further said to the jury, that the defendant has placed his defense on that proposition.

2. The defendant's counsel also requested the presiding justice to instruct the jury that if, when Dorr purchased the buckboard of the plaintiff, it was expressly agreed between them that the title should pass to Dorr, and the plaintiff should assert no claim of title or possession until maturity of the note and condition was broken, and Penney bought and sold *bona fide* without notice and for a valuable consideration, and Haslam, the defendant, likewise so bought and sold, all before the maturity of the note, then trover would not lie. This requested instruction was not given.

3. Two notes were originally given by Dorr for the buckboard and recorded. One had been partially paid, and a new note given for the balance. The other note was wholly unpaid. The presiding justice ruled that if the plaintiff was entitled to recover he could recover as damages the amount due on both notes, that is, the original second note, and the new note given in renewal of balance of first original note, provided such amount did not exceed the value of the buckboard at the time of its conversion.

The bill of exceptions states that the entire evidence is made

a part thereof. The jury rendered a verdict for the plaintiff for the full amount of his claim.

*Deasy and Higgins, E. S. Clark* with them, for plaintiff.

*Hale and Hamlin,* for defendant.

Estoppel: *The Brig Sarah Ann,* 2 Sum. 206; *Merchants Bank* v. *State Bank,* 10 Wall. 604; *Baker* v. *Pratt,* 15 Ill. 568; *Mills* v. *Graves,* 38 Ill. 455; *People* v. *Brown,* 67 Ill. 435; *Knoebel* v. *Kircher,* 33 Ill. 308; *Smith* v. *Newton,* 38 Ill. 230; *McCravey* v. *Remson,* 54 Am. Dec. 194; *Dezell* v. *Odell,* 3 Hill, 221; *Stonard* v. *Dunkin,* 2 Camp. 344; *Chipman* v. *Searle,* 3 Pick. 38; *Stevens* v. *Baird,* 9 Cow. 271; *Frost* v. *Ins. Co.* 5 Cow. 157; 1 Greenl. Ev. § 208; *Gregg* v. *Wells,* 10 A. and E. 90; *Pickard* v. *Sears,* 6 A. and E. 469; *Chapman* v. *Pingree,* 67 Maine, 198; Big. Est. p. 560, et seq.

Trover does not lie. *Vincent* v. *Cornell,* 13 Pick. 294; *Boobier* v. *Boobier,* 39 Maine, 406 (plaintiff did not have right of immediate possession). *Winship* v. *Neale,* 10 Gray. 382; *Newhall* v. *Kingsbury,* 131 Mass. 445, and cases cited. *Horwood* v. *Smith,* 2 T. R. 750; *Farrant* v. *Thompson,* 5 B. and A. 826. Damages: Holmes note of $61, same as a mortgage under our statute. Plaintiff not entitled to recover more than the amount due thereon. *Warren* v. *Kelley,* 80 Maine, 512.

VIRGIN, J. Trover for a buckboard delivered by the plaintiff on June 25, 1887, to one Dorr and taking back therefor a Holmes note, of the same date, for $61, on fourteen months, duly recorded on July 29, 1887.

Within a few weeks (exact date in dispute) after his conditional purchase, Dorr exchanged the buckboard for a "cut-under" with one Penney, who, in September following, sold it to the defendant, who in June, 1888 — before the commencement of this action — sold it to one Smith.

The defense was put upon three grounds:

(1.) That the defendant's vendor (Penney) purchased the buckboard some time before the Holmes note given therefor was recorded on July 29, which issue the jury found for the plaintiff.

(2.) That the plaintiff, by his acts and silence, was estopped from claiming title in the property. The testimony upon this point was in dire conflict. The bill of exceptions states that, "Dorr and Penney, witnesses called by the defendant, testified in effect that they made the trade for the sale of the buckboard to Penney, in the presence of the plaintiff, and that Penney asked the plaintiff if he had any claim on the buckboard, and that the plaintiff answered in the negative." That "the defendant's counsel requested the presiding justice to instruct the jury that, if the sale from Dorr to Penney was made in the presence of the plaintiff and the plaintiff did not disclose his claim, but said he had no claim to the buckboard, then the plaintiff was estopped from setting up any claim against Penney or his vendee, (the defendant)"—which the judge declined to give. Did he err? We think not.

While generally this court can act on a bill of exceptions only in the form as made up and allowed at *nisi prius* (*Hunter* v. *Heath*, 76 Maine, 219), still when the stenographer's report of the evidence is made a part of the bill of exceptions, it must control the allegations in the bill as to matters of fact, if there be a conflict between them. *Harmon* v. *Harmon*, 63 Maine, 437. Bills of exceptions are generally made at the heel of the session before the stenographer has extended his minutes and the report is made a part of the bill for the special purpose of correcting possible errors incident to the circumstances.

In the case at bar the reported evidence is made a part of the bill. By that it appears: (1,) That they did not make the trade in the presence of the plaintiff. (2,) Nor did they testify that Penney asked the plaintiff if he had any claim on the buckboard. (3,) Nor did they testify, as stated in the bill, but on the other hand, that, when Dorr, in the presence of Penney, informed the plaintiff that he himself "was talking of trading the buckboard for a cut-under with Penney," that "the plaintiff did not say anything about it."

Requested instructions not based upon the facts proved, are properly refused. *Brackett* v. *Brewer*, 71 Maine, 478 ; *Grant* v. *Libbey*, *Id.* 427 ; *Pillsbury* v. *Sweet*, 80 Maine, 392. The

requested instruction was not founded on facts proved, but on allegations of facts erroneous in the three particulars named.

Moreover, if the plaintiff did make the statement alleged in the bill of exceptions, the presiding justice might properly decline to give the peremptory instruction as requested. For notwithstanding the want of harmony among the authorities in their attempt to reduce the doctrine of equitable estoppel within the limits of any particular formula, they all agree that, however well calculated the conduct of one may be to induce or influence another to act in a particular manner, no estoppel can arise unless he who alleges it was thereby induced or influenced to, and did in fact act. *Titus* v. *Morse*, 40 Maine, 348 ; *Allen* v. *Goodnow*, 71 Maine, 420 ; 2 Pom. Eq. § 812, and numerous cases in notes. That element is present in all the cases on equitable estoppel cited on the defendant's brief. And that is a question of fact for the jury. *Pickard* v. *Sears*, 6 Ad. and E. 469 ; 1 Thomp. Tr. § 1109. So the meaning of words used in a conversation and what the parties intended thereby to express, is exclusively for the jury to determine ; and it is not for the court to rule as a matter of law that they amount to an equitable estoppel. *Brubaker* v. *Okeson*, 36 Pa. St. 519. Moreover requested instructions must be complete and correct in their entirety, otherwise they are properly refused ( *Grand T. R. Co.* v. *Latham*, 63 Maine, 177 ; *Snow* v. *Penob. R. I. Co.* 77 Maine, 55) as well as applicable to the facts proved. *Duley* v. *Kelley*, 74 Maine, 556.

(3.) Neither was the second requested instruction applicable to facts proved. The gravamen of the request is put upon the hypothesis, "that if, when Dorr purchased the buckboard of the the plaintiff, it was expressly agreed between them that the title should pass to Dorr, and the plaintiff should assert no claim, until maturity of the note and the condition was broken," &c. But no such facts were proved. Dorr testified — "Nothing was said about the note, only I was to give him my note for the board." To be sure, the plaintiff testifies that his custom was "to let men have boards and take their notes and record them, and that he never interfered with men's possession until the

notes became due and they cannot pay — sold Davis his in the same way." Such was his custom. But that is far from an "express agreement" with Dorr that "the title should pass to Dorr, and that he would not assert any claim," &c. And such as the bill of exceptions recites especially as to the passing of the title to Dorr, would be a direct contradiction of the express terms of the note itself, which is the peculiar characteristic of such a note.

The defendant takes exception to the rule of damages given by the presiding justice. Dorr gave two notes for the buck-board — one for $79, on four months, and the Holmes note for $61, on fourteen months. On October 24, 1887, $30, were paid on the former and a new note then given for the balance of $49. The presiding justice instructed the jury that, the plaintiff could recover, if anything, the amount due on the Holmes note and the new note — "provided such amount did not exceed the value of the buckboard at the time of the conversion." We think the instruction was sufficiently favorable to the defendant. *Brown* v. *Haynes*, 52 Maine, 578 ; *Grant* v. *King*, 14 Vt. 367.

The defendant strenuously contends that, on the issue of fact whether Dorr sold to Penney before or after the registration of the note, the finding that it was after, should be set aside as being against the manifest weight of the evidence. A careful examination of the evidence leaves a strong impression in our minds that the preponderance of evidence is against the finding. But a jury of the vicinage, with better opportunities for finding the truth in this conflicting evidence, with the issue sharply made and fully presented, have found a verdict based upon the express testimony of three witnesses, which if true makes the verdict well grounded — though the testimony of several other witnesses tends to prove the contrary. In this connection the defendant lays great stress on the improbability of the truthfulness of the testimony of the plaintiff and one Leland that about the middle of August (two weeks after the note had been received back from the recording clerk) the defendant drove to the plaintiff's premises with the buckboard and said he "was

talking of trading for the board, but did not want to trade for it and then have it taken away from him," and asked, "what about this board of Dorr's;" that the plaintiff replied, "I have got a Holmes note on it and it is recorded, and I took out the note and showed it and the record to Penney, and told him nothing had been paid on the note and I shall hold the board until it is paid for." The defendant testified that those statements were entirely false. And it is urged that the defendant's denial is true, or else he would not, with all this knowledge as to Dorr's want of title, have completed the trade and taken the risk of having "it taken away from him," which he assigned as the reason for seeking for the information. We appreciate the force of this suggestion ; but we think the improbability is very materially neutralized by the testimony of Dorr that, "at the time he was good as anybody," meaning of course financially speaking.

*Motion and exceptions overruled.*

PETERS, C. J., WALTON, FOSTER and HASKELL, JJ., concurred.