STATE OF MAINE

*vs.*

NORMAN MITCHELL

Aroostook.   Opinion, September 12, 1949.

*James P. Archibald, County Attorney,* for State of Maine.

*Harry E. Nixon* and *Milton A. Nixon,* for respondent.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, JJ.

MURCHIE, C. J.    This respondent was convicted of assault and battery on one Manley Sharpe, under an indictment alleging an assault with a knife with intent to kill and murder.   When the state rested the jury was instructed that the evidence would not justify a finding of intent to murder and the case was finally submitted for decision whether assault with intent to kill had been proved.   The Bill of Exceptions alleges error in the refusal of the justice presiding in the Trial Court to direct a verdict of "not guilty" and to permit the respondent to testify concerning his knowledge, either before or after the event, that Sharpe had made threats against him.

The evidence establishes, beyond doubt, that Sharpe was cut badly by a knife wielded by the respondent during a physical fracas between them at the time and place alleged. The respondent sought to justify his action as self defense and testified both that the row was started by Sharpe and that the cutting was done when he was afraid of his life and thought that Sharpe was killing him.   Immediately following these declarations he testified definitely, in answering an inquiry whether Sharpe had threatened previously to kill him:

> "I didn't know at that time, I didn't know nothing about it.   I didn't know he had anything against me to get me for."

Thereafter he said that he learned later of Sharpe's threat to kill him.   That statement was stricken from the record, because the respondent did not hear the threat, personally, and immediately thereafter the questions in controversy, quoted *infra,* were asked and excluded, on objection.   Ex-

ceptions to the rulings involved are the subject matter of the second exception set forth in the bill.

The first was to the refusal to direct a verdict. It was not argued either orally or in writing, nor could it have been with any prospect of success. The record presents a particularly clean-cut conflict of testimony as to whether the fracas was started by the respondent or by Sharpe. The evidence of the latter, and of the only eye witness to the start, was that the respondent was the aggressor. It was for the jury to determine the fact. The issue on that exception is well stated in *State* v. *Bobb,* 138 Me. 242; 25 A. (2nd) 229, 234, and cases cited therein. There is no suggestion of merit in it.

The exception to the exclusion of evidence quotes a little more than a page of the record, carrying three questions relative to threats made against the respondent by Sharpe which the respondent was not permitted to answer, some colloquy of counsel and court with reference thereto, and a question answered without objection which establishes that Sharpe had never made any threats against the respondent in his hearing. The first of the three questions excluded made no reference to the time when the respondent heard of the threats to which it alludes, and requires no consideration because the subsequent ones cover the full time range from that standpoint, although neither fixes the time when the threats to which they were intended to relate were made. The questions were:

"Did you know at the time of this altercation whether or not Sharpe had made threats against you?"

and

"Have you learned since whether or not he made any threats against you prior to this altercation?"

Both questions involve hearsay evidence, which is not admissible as a general rule. There are exceptions to that

rule but they are not applicable "when, from the nature of the testimony offered, it is manifest that better evidence exists and is accessible." *Gould* v. *Smith,* 35 Me. 513; *State* v. *Butler,* 113 Me. 1; 92 A. 819. Both were designed to get evidence before the jury that threats had been made against the respondent by the person he is charged with having assaulted. The distinction between them lies in the fact that the first relates to threats communicated to him prior to the time of the alleged assault, while the second admittedly refers to knowledge acquired by him at a later time.

It is only with reference to the first question that the allegation of the Bill of Exceptions that, because the respondent was prepared to show that threats had been communicated to him, he had reason at the time of the alleged assault:

> "to believe that he was in imminent danger of great physical harm"

has any point. The issue thus presented is not whether threats had been made, but whether, if so, they had been communicated to the respondent and he was apprehensive of great physical harm. It is undoubtedly true, as the exception alleges, that such apprehension is an important element of justifiable self defense. That explains the exception to the general rule which makes hearsay evidence of communicated threats admissible. The respondent cites numerous authorities to sustain his claim that it is always permissible to prove communicated threats by hearsay. The Massachusetts Court in 1945, in *Commonwealth* v. *Rubin,* 318 Mass. 587; 63 N. E. (2nd) 344, 345, recognized the principle as somewhat more limited in operation. There Mr. Justice Lummus stated that:

> "Where self defense is invoked by a defendant, threats of violence made against him by the person hurt or killed by him are generally admissible, when known to the defendant before the act, as evidence of his apprehension for his own safety, and the reasonableness of that apprehension."

There can be no point in this case in resolving the issue as to the scope of the exception. This respondent could have had no ground for apprehension concerning his safety on the basis of communicated threats at the pertinent time, since he had already testified, when the question with reference thereto was excluded, as heretofore noted, that he had no knowledge about any threats at that time. The allegation of his Bill of Exceptions as to communicated threats is entirely contrary to his own sworn testimony. As to such threats, therefore, his exception will have to be overruled on the principle recognized in *Tower* v. *Haslam*, 84 Me. 86; 24 A. 587; *Charles* v. *Harriman*, 121 Me. 484; 118 A. 417; *State* v. *Rice & Miller Co.*, 130 Me. 316; 155 A. 804; *Smith* v. *Davis et al.*, 131 Me. 9; 158 A. 359; 81 A. L. R. 78. In the first of these cases the court said that, when the evidence was incorporated in the exceptions, as it is in this case:

"the stenographer's report * * * must control the allegations in the bill as to matters of fact, if there be a conflict between them."

Note has already been made that the allegation of the Bill of Exceptions relative to apprehension of imminent danger can have no bearing on the second quoted question excluded. The testimony of the respondent, immediately prior to his statement that he knew nothing about the threats at the time of the assault, was that he was afraid of his life and thought that the person with whom he was fighting was killing him. It is permissible, however, under some circumstances, to prove that a person on whom an assault is alleged to have been been committed had made threats against the person charged with the assault. The issue in such a case is not whether the respondent knew of them, but whether in fact the threats had been made. The reason for the admission of evidence of such threats, as stated in *Commonwealth* v. *Rubin, supra*, is that:

"A threat is a declaration of purpose, and like other declarations of purpose is evidence that an

occurrence that might be in execution of that purpose was in fact in execution thereof."

That case declares evidence of uncommunicated threats admissible whenever a person charged with assault asserts that he was acting in self defense and there is evidence of some act on the part of the person injured by him that might constitute such an attack as the "declaration of purpose" threatened. The issue for jury decision is which of two persons committed an assault, and which was assaulted, and a respondent is entitled to prove by direct evidence that threats had in fact been made by the other person. In this case the person alleged to have been assaulted appeared as a witness for the state and denied, in cross-examination, having made any threats against the respondent in the presence of any one of three named individuals. Each of those individuals was called as a witness for the defense. Two of them testified definitely that they had heard Sharpe threaten to "get" the respondent, while the third repeated the threat of an intention to "pick a fight" with him. The issue had no reference to the respondent's knowledge of the threats, but was merely whether or not they had been made so far as they might have a bearing on who started the fight. The verdict carries the factual decision that the respondent did so, notwithstanding the evidence that Sharpe had made threats against him of which he had no knowledge at the time, and the impeachment of the testimony of Sharpe that that evidence carried. The respondent was not entitled to testify that the threats had been communicated to him after the assault.

*Exceptions overruled.*