GEORGE E. BURPEE
*vs.*
INHABITANTS OF TOWN OF HOULTON ET AL.

Aroostook.　Opinion, November 28, 1960.

*Malcolm Berman,* for plaintiff.

*Bishop & Stevens,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

RESCRIPT.

SULLIVAN, J.   This is an appeal from a statutory and routine decree of a Superior Court Justice, which affirmed the award of workmen's compensation to the petitioner, against the respondent Town and its insurer.

On July 21, A. D. 1956 the petitioner whilst working for the Town sustained an injury to his back, by accident arising out of and in the course of such employment. He suffered discomfort and pain in doing so but completed his day's work. He passed the next day in bed and two days thereafter engaged treatment from a physician of his own selection. The Town through its Road Commissioner was officially informed of the casualty by the petitioner on the very day of its happening and reported in prompt course to its insurer. The petitioner was disabled for 2 or 3 weeks and upon medical advice resorted to diathermy at the hospital. He discussed his misfortune with the Town Manager. He resumed his employment with the Town by operating a light truck, a task which occasioned no lifting or loading. He so functioned until November, 1956 when he was assigned to driving a tractor but because of resultant pain had to desist from the latter occupation after one day's experiment. X-rays were taken in the fall of 1956. The petitioner was obliged to terminate his work relation with the Town because of the dearth of less strenuous duties within his restricted capacity and available in the municipal service. Some six weeks later he obtained a job driving a single horse and yarding wood for a new employer. Such work he performed until July, 1957 when he moved to Massachusetts for want of any further employment at Houlton within his lessened competency. He felt continuous distress from his accident and remained under the medical super-

vision of his doctor so long as he resided in Houlton. In Massachusetts although construction jobs were quite plentiful he could accept no employment for 2 months because of his inability to lift much weight. Following labor for 2 months as a helper upon a light truck he graduated to the status of operator and fulfilled that position until the beginning of 1960 and the hearings before the Industrial Accident Commission in this case.

The petitioner had imputed his disability to injured muscles and had assumed that the condition would correct itself. Six months after the accident, however, he had begun to experience prickly sensations over both of his lower extremities whenever such effects were superinduced by prolonged sitting. In the fall of 1958 he became more acutely concerned and consulted a doctor in Massachusetts. From April, 1959 there was aching in both lower extremities. He was hospitalized for 11 days but returned to work because of a deficiency of funds. Advised to undergo surgery he had to decline for financial reasons. His legs enjoyed relief after myelograms. He lost some weight. He became nervous and subject to dizziness. He walked with a limp. There were other symptoms. The ultimate diagnosis was a herniation of the nucleus pulposus due to trauma, with surgery requisite.

From the accident to the time of hearing in this case the petitioner had lost 18 days of employment besides the original 3 weeks of disability and the 2 months he spent in quest of compatible work in Massachusetts.

The petitioner never received any bills from his doctor in Houlton or from the hospital there. The Town's insurer paid those charges which amounted to $57.50. $17.50 were paid to the hospital on August 21, 1956 for 7 treatments extending from July 28 to August 4, 1956. $9.00 were paid to the doctor on August 21, 1956 for visits of the patient on

July 23, July 29 and August 4, 1956. This amount of $26.50, it will be noted, was for medical and hospital services during the first 30 days after the petitioner's injury. R. S., c. 31, § 9.

The Town's insurer later made the following payments to the petitioner: October 9, 1956, $3.00 to the doctor for a visit of September 6, 1956; May 13, 1957, $3.00 to the doctor for a visit of April 2, 1957; May 13, 1957, $25.00 to the hospital for an X-ray on April 2, 1957. This sub-total of $31.00 with the above amount of $26.50 yields a composite sum of $57.50 for all expenses paid. It will appear that all such disbursements by the insurer were incurred and paid within one year from July 21, 1956, the date of petitioner's accident.

The Town and its insurer had investigated the petitioner's claim and were compliant with paying the petitioner his compensation and lawful charges. The insurer in September, 1956 mailed 2 letters to the petitioner asking him to sign a compensation agreement. The petitioner did not reply. The insurer's representative sought the petitioner at his home without success and then enlisted the cooperation of the Town to close an agreement with petitioner. The petitioner called at the insurer's office and declined to sign a form or accept compensation. Petitioner explains that the paper for his signature was believed by him to be a release.

On January 30, 1959, 2 years, 6 months and 9 days after his accident the petitioner filed his claim for compensation and benefits under the Workmen's Compensation Act. He admits that he had never been told by the insurer or anyone that there was no necessity for his filing a claim. He testified that he did not file a claim within one year after his accident because he had been told by his Houlton doctor not to sign any papers until his back was well.

Presented in evidence by the respondents, the Town and its insurer, was a medical report, dated August 14, 1956

and we may infer rendered by the petitioner's Houlton physician to the respondents. The statement identified the petitioner as patient, described the accident of July 21, 1956 and diagnosed his injury as follows:

"Muscle spasm, tenderness in lower lumbar region — marked limitation of forward bending treated by adhesive strapping and diathermy."

Then the report imparted the following prognosis:

"Should not result in permanent disability. At last examination 8/2 it was felt patient could probably resume light work on 8/6/56. Total disability estimate 2 weeks 2 days. Ended 8/6/56. Partial disability estimate 4 weeks — days. Ended — 19 — Estimated cost of medical treatment $15 + hospital charge for diathermy."

The quotations immediately above are the findings and predictions of petitioner's doctor written one week before the respondents paid the first bills of the petitioner and comprise the only professional data of record in respect to the petitioner's condition actual and prospective which were possessed during the accident year. by the respondents.

R. S., c. 31, § 33 as worded at the time of petitioner's accident was pertinently as follows:

"An employee's claim for compensation, under the provisions of this act shall be barred unless an agreement or a petition as provided in the preceding section shall be filed within 1 year after the date of the accident; provided, however, that any time during which the employee is unable by reason of physical or mental incapacity to file said petition shall not be included in the period aforesaid. - - - - No petition of any kind, however, may be filed more than 10 years following an accident."

To the petition of the employee here the respondents pleaded the bar of the foregoing statute in as much as the

petitioner had not filed his claim within the year following his accident.

The respondents had not denied their liability to pay compensation during the year subsequent to the petitioner's injury but admitted their obligation and sought to consummate a written agreement with the petitioner.

Following hearing upon the petitioner's claim the Commissioner presiding found:

"- - - that the petitioner did not file a Petition within one year from date of alleged accident. Neither was he prevented from so doing by reason of physical or mental incapacity to file said Petition.

"- - - failure to file a petition within one year from date of accident was waived by the payment of medical and hospital treatments and other acts of the respondents and that his filing of a Petition on January 30, 1959 was in order under the provisions of the Act - - - "

"- - - We feel that under (sic) our Maine Statute on all the facts we have cited, justifies us in finding that the acts of the respondent in voluntarily paying doctors and hospital bills for treatment, same not being merely for the purpose of first aid or routine examinations, plus its admitted conduct in presenting this petitioner with Agreements, Settlement Receipts and a check for compensation, even though the petitioner did not consummate the Agreement and accept the check, did constitute a waiver on the part of the respondents and did toll the Statute of Limitations."

The Commissioner thereupon decreed that the petitioner is entitled to compensation and the respondents appeal.

In issue before this court is the sufficiency of the evidence in the record (*Eleanora Gagnon's Case,* 144 Me. 131) to sustain the finding of the Commissioner that:

" - - - failure to file a petition within one year from date of accident was waived by the payment of medical and hospital treatments and other acts of the respondents - - - "

The term waiver is now considered as indiscriminately inclusive of common law waiver and of the less delimited equitable estoppel in *pais*, (*Libby* v. *Haley*, 91 Me. 331, 333), both of which media our court has often commendably invoked to prevent unjust forfeitures.

Except for those cases in which this court has held that the defense of failure of the petitioner to have filed his claim within the accident year had been waived because such a defense had not been specifically pleaded (*McCollor's Case*, 122 Me. 136; *Comer's Case*, 130 Me. 373, 375; R. S., c. 31, § 35) there appears to be no precedent in which this court has sustained a waiver of that time limitation imposed by the Legislature. R. S., c. 31 contains time extension provisions for the filing of claims, R. S., c. 31, § 33; P. L., 1957, c. 325, but not for periods of grace for such filing where respondents have voluntarily paid the petitioner's hospital or medical bills.

This court in 1921 in the case of *Smith* v. *Boiler Co.*, 119 Me. 552, 560, concerning an accident on December 10, 1916, found that the petitioner had complied with the conditions of the statute then extant and had seasonably asserted her claim for compensation. The opinion appended a dictum that notice of claim may be and had been in fact waived by the employer.

In 1922 there followed the decision in *Graney's Case*, 121 Me. 500, 502. The court determined the issue presented and tangentially reiterated the dictum in *Smith* v. *Boiler Co.*, *supra:*

" - - - Next, within one year after the occurrence of the injury, a claim for compensation must be

made - - -; but this may be subject of a waiver. Smith v. Boiler Company, 119 Maine, 552 - - - "

In 1925 in the *Garbouska Case,* 124 Me. 404, 405, a belated claim was disallowed and this court said:

" - - - It is not open for the Commission to award compensation in magnanimous indifference to restrictive law. The whole power over the subject of compensation is derived from and limited by the act. - - - The words of the statute book are plain, positive and inexorable.

"Each limitation period for the beginning of proceedings is jurisdictional. It pertains to the remedy. The filing of an agreement or petition is action essential to the allowing of compensation. It is mandatory that the one or the other should be placed on record sufficiently early. This petition, not having been filed within the fixed limit, is forever shut out."

Waiver was not adverted to.

In 1929, P. L., c. 300, § 32 our statute was amended:

"No proceedings for compensation - - - shall be maintained unless - - - "

was supplanted by - - -

"An employee's claim for compensation - - - shall be barred unless - - - " (R. S. 1954, c. 31, § 33.)

In 1938 in *Thibodeau's Case,* 135 Me. 312, 313 this court in rejecting a claim filed more than one year after the accident said:

"Notice and petition, given within the time limited by law, are prerequisite to an employee's right to recover compensation for accidental injury, except that, 'any time during which the employee is unable by reason of physical or mental incapacity to make said claim or file said petition shall not be included in the periods aforesaid.' "

Again in 1938 in *Wallace* v. *Booth Fisheries Corp.*, 135 Me. 336, 337, this court ruled against an employee who had suffered his year for claim to elapse because his own physician had told him he would get better. The *Garbouska Case, supra,* was reaffirmed. The court did observe:

" - - - There is no finding by the commissioner, and no evidence in the record of any waiver of these (time) requirements - - - "

In the instant case we shall review the record with respect to evidence of waiver or estoppel on the part of the respondents.

"1. Waiver is a voluntary relinquishment of a known right, benefit or advantage which would otherwise have been enjoyed.- -It is essentially a matter of intention which may be proved by a course of acts and conduct or by such neglect or failure to act as to induce the belief that it was the intention and purpose to waive. - - - It is also a question of fact. - - -

"2. Estoppel is a rule of law which prevents a party from asserting his rights when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth. His conduct need not be characterized by an actual intent to mislead or deceive. His acts, declarations or silence must be of such a character as to have the natural effect of influencing the person to whom it is addressed to do, or not to do, to his detriment, what he would not otherwise have done - - -

Estoppel is a question of law.- - - It will be seen from these rules that waiver is a voluntary relinquishment of a known right; yet if a party without such intention by his conduct or silence, misleads the other party, he then is estopped."

*Holt* v. *N. E. Tel. & Tel. Co.*, 110 Me. 10, 12.

"Acquiescence and waiver, however, are positive acts, the relinquishment of some known right or

advantage, the burden of proving which is on the party claiming it. Full knowledge of the rights waived must be shown. - - - "

*Denison* v. *Dawes*, 121 Me. 402.

"A waiver of a right is primarily based on the intent of the person possessing it to forego its benefits. - - - This court has held that evidence of such intention must be clear and convincing."

*Johnson* v. *Life Insurance Co.*, 130 Me. 143, 145, 146.

" - - - To make a case of waiver of a legal right there must be a clear, unequivocal and decisive act of the party showing such a purpose, or acts amounting to an estoppel on his part - - - "

*Medomak Canning Co.* v. *York*, 143 Me. 190, 196.

" - - - however well calculated the conduct of one may be to induce or influence another to act in a particular manner, no estoppel can arise unless he who alleges it was thereby induced or influenced to, and did in fact act. - - - "

*Tower* v. *Haslam*, 84 Me. 86, 90.

" - - - But it is undoubtedly true that this doctrine of equitable estoppel should be applied with great care in each case, so that a person may not be debarred from the maintenance of a suit based upon his legal rights, unless the conduct relied upon as creating an estoppel has been of such a character, and has resulted in such injury to the person relying upon such conduct, that, in equity and good conscience, he should be thereby prohibited from enforcing the legal rights which he otherwise would have, nor unless in any given case all the elements exist which have been universally held to be essential for the purpose of creating an estoppel."

*Rogers* v. *P. & B. St. Ry.*, 100 Me. 86, 91.

See, also, *Hooper* v. *Bail*, 133 Me. 412, 416.

"The burden of proof is upon the one who asserts
the estoppel. This burden must be maintained by
proof that is clear. - - - Not only must the proof
be clear but estoppel cannot rest upon mere con-
jecture - - - This rule as to the quantum of proof,
which is another way of stating that the proof of
an estoppel must be full, clear and convincing ap-
plies to every essential element necessary to the
creation of estoppel. - - - "

*B. & M. R. R.* v. *Hannaford Bros.*, 144 Me. 306,
314.

The petitioner in this case from the time of his mishap
until the hearing before the Commissioner was continuously
distressed and impeded in lesser or greater degree. He was
thus constantly kept aware of his injury. He was at no
moment excusably ignorant of his legal rights or duties.

" - - - The petitioner knew he had received an in-
jury. He knew that injury had resulted in his
incapacity to perform his work. He is charged
with knowledge that, if he sustained an accident
arising out of and in the course of his employment,
he was entitled to compensation upon compliance
with the established rules of procedure."
*Wallace* v. *Booth Fisheries Corp.*, 135 Me. 336, 338.

Petitioner admits that he was never told by anybody that
he did not have to file a petition within one year from his
accident. Neither he nor other witnesses cite any efforts
by the respondents to lull him into security or wittingly or
unwittingly to encourage him to postpone his claim filing.
The petitioner with plain candour testified that his default
in filing claim within the year resulted solely from what his
personal physician advised him. He does not implicate the
respondents.

"The Commissioner: Now I would like to ask you
one or two questions, Mr. Burpee.

"Why was it that you didn't file any petition with-
in a year from the date of the accident?

"The Witness: I was told not to sign no papers.

"The Commissioner: Who told you that?

"The Witness: By Dr. Harrison until my back was —

"The Commissioner: Yes

"The Witness: (continuing) - - well.

"The Commissioner: Now, did anyone from the insurance company,- - did you ever, either verbally or by letter, did anyone ever tell you that you didn't have to file such a petition, outside of what Dr. Harrison told you?

"The Witness: No, sir.

"The Commissioner: I think that explains the thing pretty well up to this point.

"Any questions."

The petitioner refrained from filing in obedience to the advice of his physician as the petitioner understood such counsel. That was his sole motivation, upon the record. There is no evidence of the influence of any other person or factor.

The record reveals that the Town and its insurer had received prompt notice of the petitioner's accident and investigated the incident to their satisfaction. R. S., c. 31, § 9 required:

"During the first 30 days after an injury aforesaid the employee shall be entitled to reasonable and proper medical, surgical and hospital services, nursing, medicines - - - when they are needed. The amount of such services and aids shall not exceed $100 - - -

"Upon *knowledge or notice of such injury* the employer shall promptly furnish to the employee the services and aids aforesaid. In case, however, the employer fails to furnish any of said services

or aids, or in case of emergency or other justifiable cause, the employee may procure said services or aids and the commission may order the employer to pay for the same provided that they were necessary and adequate and the charges therefor are reasonable - - - "   (Italics supplied.)

When, therefore, the Town or its insurer on August 21, 1956 paid to the petitioner's physician and to the hospital, charges in the sum of $26.50 for medical and hospital services rendered to the petitioner between July 23 and August 4, 1956 because of the accident on July 21, 1956, the payments were made not from grace or choice but in accordance with the statutory mandate quoted above.

"Upon the happening of the accident, the contractual right of Mr. White to have compensation vested, and the obligation to pay it became definite. Gauthier's Case, 120 Maine 73. That is, to begin with, the employer was bound to furnish, or pay for, medical, surgical, and hospital services, nursing, medicines, and the like, during the first thirty-day period, to an extent not exceeding one hundred dollars; the obligation being enforceable by petition to the Industrial Accident Commission in behalf of the employee. Ferren v. Warren Company, 124 Maine, 32.

"That right to have professional skill and services and care was property. Melcher's Case, 125 Maine, 426."

*White's Case,* 126 Me. 105.

The Town and its insurer had received from the petitioner's physician, dated August 14, 1956 the medical report and prognosis which are quoted earlier in this opinion. That communication depicted the petitioner's injury as mild and his recovery as of brief duration. There is no evidence that any other or revised medical bulletin was afforded to Town or insurer by the petitioner or by any person during the accident year. The petitioner continued at work for the

Town at lighter labor until November of 1956. During the year subsequent to the accident the respondents upon the record had no demonstrated reason to apprehend the much protracted disability from which the petitioner was destined to suffer.

The Town and its insurer in September, 1956 were prepared to acknowledge and satisfy the petitioner's right to compensation. The respondents were "anxious" to pay the claim and get the matter "off the books." They prepared the first check and companion papers and sought the agreement of the petitioner in various approaches but the latter would not comply. He states that he understood that one instrument for his signature was a release but agrees that nobody advised him to sign it. Upon inquiry of the Commissioner the petitioner testified:

"A. Well the only thing that I could make out of it (insurer's letter) was that they wanted me to sign a release.

"Q. Well, did they say release or did they say receipts?

"A. Well, it would mean the same thing to me as far as my education is concerned."

As for a release, R. S., c. 31, § 24 in the matter of waiver of rights to compensation and R. S., c. 31, § 32 as to the requirement of official approval of agreements for compensation render it difficult to believe that an insurer would propose a release. The Commissioner found that the documents sent to the petitioner by the respondents were in fact an agreement, settlement receipt and compensation check.

On October 9, 1956 the insurer paid $3.00 to petitioner's doctor for an office visit by the petitioner on September 6, 1956, at a time when respondents were striving to effect an agreement with the petitioner. On May 13, 1957 the insurer well within the accident year paid the hospital $25 for X-rays of the petitioner on April 2, 1957.

It is quite obvious that the respondents in effect admitted their liability to pay compensation but it is equally clear that they were prevented from doing so only by the obdurate refusal of the petitioner to execute a statutory compensation agreement. The conformity of the respondents with their limited information in paying the additional and modest bills contracted subsequent to the first 30 day period is evidence of a concession of liability but it is not an adequate basis for inference that the respondents had in addition justified the petitioner in assuming or had assented to. the fact that he was excused from compliance with the statutory time limitation for claim filing. Recognition of liability is not, without more, inconsistent with a lawful expectation that a petitioner will heed the statutory time bar and conserve his right to prosecution. It does not appear affirmatively in this case that the petitioner was ever aware that the bills were paid. He did not receive any of the bills.

Two months and eight days of the accident year remained after the payment of the last bill by the respondents and more than 1 year and 8 months were to lapse thereafter before the petitioner filed his claim with the Commission. There was never any obstacle to impede the petitioner from filing.

The action of the respondents in paying the bills was equivocal in that such payments may consistently have been made from motives of duty or routine administration without indulgence to the petitioner.

> " - - - It (waiver) is essentially a matter of intention; and when the only proof of that intention rests in what a party does or forbears to do his acts or omissions to act relied upon should be so manifestly consistent with and indicative of an intention to voluntarily relinquish a then known par-

ticular right or benefit that no other reasonable explanation of his conduct is possible - - - "

*Berman* v. *Accident Association,* 107 Me. 368, 373. See, also, *Johnson* v. *Life Insurance Co.,* 130 Me. 143, 146.

Petitioner's counsel observes that the respondents might have filed their petition to have the petitioner's status determined by the Commission, R. S., c. 31, § 32. The statement is correct but the statute is permissive and not mandatory. The respondents had no obligation.

An intention of the respondents to waive the statutory limitation of time has not been demonstrated nor is there proof that payments by the respondents influenced or decided petitioner's conduct or could have done so in this case.

It is not necessary to this decision and we express no opinion as to whether or not the limitation of 1 year for the filing of an employee's claim for compensation under the provisions of R. S., c. 31, § 33 may be tolled by waiver or estoppel.

*Appeal sustained.*